UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-25-GCM

| DYRRLE GENE OSBORNE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| UNITED STATES OF AMERICA, et al., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint under 28 U.S.C. §§ 1915A and 1915(e), (Doc. No. 1), and on Plaintiff's Motion to Proceed in Forma Pauperis, (Doc. No. 2).

The Court first notes that, as to Plaintiff's Motion to Proceed in Forma Pauperis, Plaintiff states in his financial affidavit that he receives no monthly income from wages, but that he receives $328 per month from his military retirement and $944 per month in social security payments. (Doc. No. 2 at 1). Plaintiff reports monthly expenses of at least $2062. (Id. at 2). Because Plaintiff's monthly expenses are significantly higher than his monthly income, the Court finds that Plaintiff does not have sufficient funds with which to pay the filing fee, and the Court will grant Plaintiff's motion to proceed in forma pauperis for the limited purpose of this initial review.

I.     BACKGROUND

A.     Plaintiff's Underlying Conviction in this Court

Pro se Plaintiff Dyrrle Gene Osborne, a resident of Charlotte, North Carolina, was an active member of the United States Army between 2003 and 2005. (Criminal Case No.

1

3:09cr204, Doc. No. 36 at 3: Presentence Investigation Report). After Plaintiff separated from active duty, the Army continued, in error, to pay him a salary through direct deposit into his bank account, and Plaintiff spent those funds. (Id.). The amount of funds that were made to Plaintiff in error totaled around $97,000, and Plaintiff spent all of those funds. (Id.). Furthermore, according to the Presentence Investigation Report prepared in this Court, Plaintiff "also double-dipped during this period by putting in for reserve pay while simultaneously receiving active duty pay, although it was against Army regulations to receive active duty and reserve pay at the same time." (Id.).

On March 1, 2010, after a jury trial, Plaintiff was convicted of converting to his own use money exceeding $1,000 in value belonging to the U.S. government, in violation of 18 U.S.C. § 641, and of making false statements in a matter within the jurisdiction of an agency of the U.S. government, in violation of 18 U.S.C. § 1001. (Id., Doc. No. 31: Jury Verdict). On February 28, 2011, this Court sentenced Plaintiff to twenty-four months of imprisonment as to each count to run concurrently, and to two years of supervised release as to each count to run concurrently. (Id., Doc. No. 41: Judgment). Plaintiff appealed his conviction, and on January 24, 2012, the Fourth Circuit Court of Appeals found no reversible error and affirmed Plaintiff's conviction in an unpublished decision. United States v. Osborne, 462 Fed. App'x 366 (4th Cir. 2012). The Bureau of Prisons website states that Plaintiff was released from prison on January 18, 2013.

**B.    Plaintiff's Pending Lawsuit in this Court**

In the pending action filed in this Court on January 21, 2004, Plaintiff has named as Defendants the U.S. Department of Army; the agency of Defense Finance and Accounting Services ("DFAS"); the U.S. Department of the Army's 108th U.S. Army Reserves in Charlotte; several individuals employed with the Army and DFAS; Assistant U.S. Attorney Kurt Meyers,

the federal prosecutor involved in Plaintiff's prosecution in this Court; the Federal Bureau of Investigation ("FBI") and several of its agents; the U.S. Department of Justice; Robert J. Conrad, Jr., U.S. District Judge for the Western District of North Carolina; and Fourth Circuit Court of Appeals judges Paul V. Niemeyer, G. Steven Agee, and James A. Wynn; this Court as the U.S. District Court for Western District of North Carolina; and the Fourth Circuit Court of Appeals.[1] Plaintiff has also named as Defendants the U.S. Army Times and several private news outlets in the Charlotte, North Carolina, area.

Specifically, Plaintiff purports to bring the following claims as to the various Defendants: (1) "Negligen[t] practices with reckless disregard to adverse effect" as to DFAS Deputy Director of Military Pay Operations Donald R. Richards, the U.S. Department of the Army's 108th U.S. Army Reserves in Charlotte, Retired Major General James B. Mallory, Lieutenant Colonel Paul E. Reynolds, Jr., FBI agents Michael C. Young and Timothy J. Parker, U.S. District Judge Robert J. Conrad, Jr., and Fourth Circuit Court of Appeals judges Paul V. Niemeyer, G. Steven Agee, and James A. Wynn (Count One); (2) "Discrimination" by the U.S. Department of Army, the U.S. Army Reserves 108th, the U.S. Department of Justice, this Court, and the Fourth Circuit Court of Appeals (Count Two); (3) "Defamation of Character" by the U.S. Army Times, the U.S. Army Reserves 108th, Retired Major General James B. Mallory, Lieutenant Colonel Paul E. Reynolds, Jr., Assistant U.S. Attorney Kurt Meyers, WCNC News in Charlotte, North Carolina,

---

[1] The caption in Plaintiff's Complaint states that he is filing this action pursuant to 42 U.S.C. § 1983. Section 1983 does not apply to federal employees and officials. Rather, a civil rights action against federal employees and officers in their individual capacities is properly characterized as arising under and brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). See Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002). Most of the named Defendants in this action are either federal employees and/or federal officials.

WSOC TV 9 News, WMBF News, www.Allvoices.com, and Mainstream News (Count Three); (4) a violation of the Privacy Act of 1974, 5 U.S.C. § 552a, by the U.S. Army Reserves 108th Staff Sergeant Angela Eggerston (Count Four); (5) a violation of the "Civil Rights Act" by U.S. Department of the Army, the "Department of Justice with the Western District of North Carolina," and the Fourth Circuit Court of Appeals (Count Five); (6) a violation of the First, Second, Fourth, and Fourteenth Amendments by this Court and the Fourth Circuit Court of Appeals (Count Six); (7) "entrapment" by the U.S. Department of Justice, the U.S. Army Reserves, and DFAS (Count Seven); (8) "judicial misconduct," pursuant to 28 U.S.C. §§ 351-364, by Judge Conrad, Judge Niemeyer, Judge Agee, and Judge Wynn based on their "failure to ensure the equitable process, Civil Rights Act, United States of America Constitution Fifth Amendment and Fourteenth Amendment Rights Violations" (Count Eight); (9) malicious prosecution and "abuse of process" by Retired Major General James B. Mallory, Lieutenant Colonel Paul E. Reynolds, Jr., and Assistant U.S. Attorney Kurt Meyers (Count Nine); (10) false or unlawful arrest and false imprisonment by the U.S. Department of Justice, FBI agent Michael C. Young, FBI agent Timothy J. Parker, and Assistant U.S. Attorney Kurt Meyers (Count Ten); and (11) "judicial malpractice" and "abuse of process" by Retired Major General James B. Mallory, Lieutenant Colonel Paul E. Reynolds, Jr., Assistant U.S. Attorney Kurt Meyers, Judge Conrad, Judge Niemeyer, Judge Agee, and Judge Wynn (Count Eleven). Plaintiff seeks relief of $350 million in actual, compensatory, and punitive damages. (Id.). The Court more specifically describes each Count, as set forth below.

### 1. Count One—"Negligent Practices with Reckless Disregard to Adverse Effect"

In Count One, Plaintiff is essentially complaining that the Army, DFAS, and employees of DFAS were negligent in allowing funds to continue to be deposited in error into Plaintiff's

bank account after he separated from the Army, and that Defendants' negligence arose in part from racism. (Doc. No. 1 at 5-8). Plaintiff also alleges that FBI agents Young and Parker gave false statements in their reporting of Plaintiff's conduct that led to his conviction and that they also obstructed justice and demonstrated "corruption, racism, irresponsibility, malice, [and] erroneous practices that are with reckless disregard to adverse effect." (Id. at 11). Plaintiff accuses U.S. District Court Judge Robert J. Conrad, Jr., who sentenced Plaintiff in this Court, of numerous offenses, including "neglect[ing] to acknowledge Government's recklessness in financial practices," and participating in "cronyism," "racism," "injudiciousness," "malfeasance," and "egregiousness." (Id. at 11-12). Plaintiff accuses the Fourth Circuit Court of Appeals and Court of Appeals judges Paul V. Niemeyer, G. Steven Agee, and James A. Wynn of failure to "properly address" Plaintiff's case, and of erroneously confirming his conviction, violating Plaintiff's constitutional due process and other rights.

2. **Count Two—"Discrimination"**

In Count Two, Plaintiff alleges that various of the named Defendants "discriminated" against him based on his race (black) by failing, among other things, to allow Plaintiff "equal access to settlement options" and by their failure to allow Plaintiff "to address the issue of being overly paid" by DFAS rather than prosecuting Plaintiff. (Id. at 15). Plaintiff alleges, specifically, that "[i]t is my strong belief that the motive of the Department of Justice is to criminalize all African-Americans and other minorities by any and all means" and "to meet the Department of Justice's incarceration goal for budget reasons and statistical goal to show African-American males in crime." (Id. at 16). By his allegations, Plaintiff's "discrimination" claim appears to be a claim for selective prosecution, as he contends that the authorities chose to prosecute Plaintiff because of his race.

### 3. "Defamation of Character"

In Count Three, alleging "defamation of character," Plaintiff alleges that Defendants U.S. Army Times, the U.S. Army Reserves 108th, Retired Major General James B. Mallory, Lieutenant Colonel Paul E. Reynolds, Jr., Assistant U.S. Attorney Kurt Meyers, WCNC News in Charlotte, North Carolina, WSOC TV 9 News, WMBF News, www.Allvoices.com, and the "Mainstream News" made statements that Plaintiff stole or embezzled money from the Army. Plaintiff alleges that these statements were false because he has "never embezzled, stole[n], or purloin[ed]" and that he "did not steal anything and have never stolen anything in my life." (Id. at 17).

### 4. Violation of the Privacy Act of 1974, pursuant to 5 U.S.C. § 552a

In Count Four, alleging a violation of the federal Privacy Act of 1974, 5 U.S.C. § 552a, Plaintiff alleges that Angela Eggerston, Staff Sergeant with the 108th U.S. Army Reserves, "gave information and communicated with [Plaintiff's] employer without [Plaintiff's] consent and approval." (Id. at 19). Plaintiff alleges that the result of Eggerston's actions "created a hostile work environment, thus causing an adverse effect on [Plaintiff's] social and economic lifestyle." (Id.). Plaintiff alleges that Eggerston's actions were also "the cause of [Plaintiff] losing [his] job as a Military Science instructor at Florida International University in Miami, Florida in the Army ROTC program." (Id.).

### 5. "Civil Rights Act" Violation

In Count Five, Plaintiff alleges that the U.S. Department of the Army, this Court, and the Fourth Circuit Court of Appeals violated the "Civil Rights Act" by not allowing Plaintiff to "correct the error" of receiving overpayments by direct deposit to his account. (Id. at 20). He also alleges that these Defendants failed to provide Plaintiff with "equal treatment under the

law." (Id.). By his allegations, Plaintiff appears to be purporting to bring a claim of selection prosecution and/or judicial bias.

**6. Violation of the First, Second, Fourth, Fifth, and Fourteenth Amendment Rights**

In Count Six, Plaintiff alleges that this Court and the Fourth Circuit Court of Appeals violated Plaintiff's First, Second, Fourth, Fifth, and Fourteenth Amendment rights because this Court refused to allow Plaintiff to challenge a prosecution's witness and because the Fourth Circuit Court of Appeals affirmed this Court's decision.

**7. "Entrapment"**

In Count Seven, Plaintiff alleges that the U.S. Department of Justice, the U.S. Army Reserve, the FBI, and DFAS used "entrapment" practices "by neglecting to provide solutions to correct the financial errors" made by DFAS. (Id. at 24).

**8. "Judicial Misconduct," pursuant to 28 U.S.C. §§ 351-364**

In Count Eight, Plaintiff alleges that Judge Conrad demonstrated prejudice at Plaintiff's trial because Judge Conrad held a personal bias against Plaintiff's defense counsel. (Id. at 25).

**9. Malicious Prosecution and Abuse of Process**

In Count Nine, Plaintiff alleges that Assistant U.S. Attorney Kurt Meyers engaged in malicious prosecution and abuse of process "by concealing evidence to prove innocence," and that Defendant Meyers "exercise[d] corruption, racism, inequity, malfeasance and ethnocentrism." (Id. at 26).

**10. Unlawful Arrest and False Imprisonment**

In Count Ten, Plaintiff brings claims for unlawful arrest and false imprisonment against Defendants U.S. Department of Justice, FBI agents Michael Young and Timothy Parker, and Assistant U.S. Attorney Kurt Meyers.

**11. "Judicial Malpractice and Abuse of Process"**

In Count Eleven, Plaintiff alleges that the evidence presented to the grand jury to support the indictment against Plaintiff "was more deceptive than truths and therefore constitutes abuse of process." (Id. at 27). Plaintiff alleges that Assistant U.S. Attorney Kurt Meyers committed "abuse of process" because "[n]one of the events required under 18 U.S.C. § 641 ever happened to justify a criminal act." Plaintiff also alleges that the Defendant judges "failed and neglected to provide relevant case law and did not give due diligence, and they demonstrated support to abuse of process in failure to assure the equitable process of law to protect me as a citizen and 'Patriot Warrior.'" (Id.).

**II.     STANDARD OF REVIEW**

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to

ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

In Heck v. Humphrey, 512 U.S. 477 (1994), the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. <u>A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.</u> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87 (footnotes omitted; emphasis added). Under the principles announced by the Supreme Court in Heck v. Humphrey, a plaintiff cannot receive damages or equitable relief through a Bivens action for an allegedly unconstitutional conviction without first having that conviction reversed, expunged, or called into question by a writ of habeas corpus. 512 U.S. 477, 486-87 (1994). See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (noting that Heck applies regardless of the type of relief sought). See also Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995) (holding that Heck applies to Section 1983 and Bivens actions). Thus, the Court must consider whether a judgment in Plaintiff's favor in this action would necessarily imply the invalidity of his conviction. If it would, the Court must dismiss the Complaint unless Plaintiff

can demonstrate that the conviction has already been favorably terminated. Heck, 512 U.S. at 487.

Here, most of the claims that Plaintiff raises would imply the invalidity of Plaintiff's underlying conviction, including his claims for malicious prosecution, false arrest, false imprisonment, judicial misconduct, abuse of process, selective prosecution, entrapment, and Plaintiff's claims of various federal constitutional violations at Plaintiff's trial and on appeal. Plaintiff has not shown that his conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Thus, most of Plaintiff's claims in this action are barred by Heck.

Furthermore, some of the named Defendants are subject to dismissal for various reasons. First, the judges who have been named as Defendants are immune from suit under the doctrine of judicial immunity. See Stump v. Sparkman, 435 U.S. 349, 359 (1996) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); Imbler v. Pachtman, 424 U.S. 409, 419 (1976) (stating that judicial "immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences") (internal quotations omitted).

Next, as to Assistant U.S. Attorney Defendant Kurt Meyers, a prosecutor "enjoy[s] absolute immunity from civil suits for damages for actions taken while performing traditional prosecutorial duties." Puckett v. Carter, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006) (citing

Imbler v. Pachtman, 424 U.S. 409 (1976)).  In Imbler, the Supreme Court held that in "initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."  424 U.S. at 430.  The Court explained that prosecutors should be afforded absolute immunity when their "activities were intimately associated with the judicial phase of the criminal process."  Id.  Defendant Meyers was clearly acting within the scope of his prosecutorial duties in this case, and his alleged activities were intimately associated with the judicial phase of the criminal process.  In sum, Defendant Meyers enjoys prosecutorial immunity from Plaintiff's claims against him.

Next, to the extent that Plaintiff has sued private actors such as the Charlotte area news outlets for any federal constitutional violations, these entities may not be sued in a Bivens action, as a Bivens action requires that the named Defendants must have been acting under color of federal law, and Plaintiff does not allege that any of these entities acted under color of federal law.

Next, to the extent that Plaintiff is attempting to bring a claim for defamation or constitutional torts against the United States or its agencies, the United States is generally immune from suit unless it explicitly consents, see Mitchell, 463 U.S. 206, 212 (1983), and the Federal Tort Claims Act ("FTCA") is an example of Congress' waiver of sovereign immunity.  Under the FTCA, the United States consents to suit in federal district court for some tort claims.  See, e.g., Richards v. United States, 369 U.S. 1, 6 (1962).  The FTCA does not waive the sovereign immunity of the United States for "[a]ny claim arising out of . . . libel [or] slander," 28 U.S.C. § 2680(h), or for constitutional torts, Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477-78 (1994).  The Supreme Court has stated that, in a Bivens action, with respect to an alleged

constitutional deprivation, a plaintiff may not bring a Bivens claim against the United States or its agencues. Id. at 485-86. Rather, any remedy lies against the individual employee who allegedly violated Plaintiff's constitutional rights. Id., see also Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70-72 (2001). In sum, Plaintiff has no cause of action against the United States or its agencies for defamation or constitutional torts.

Next, to the extent that Plaintiff is attempting to bring a claim of negligence against the United States or its agencies under the FTCA, Plaintiff has not alleged that he has complied with the jurisdictional prerequisite for bringing such claim. As the Fourth Circuit Court of Appeals has explained:

> A key jurisdictional prerequisite to filing suit under the FTCA involves the presentation of an administrative claim to the government within two years of the incident. See 28 U.S.C. § 2401(b) (1994) (a tort claim "shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."). Moreover, "the requirement of filing an administrative claim is jurisdictional and may not be waived."
>
> An administrative claim must be properly presented. The FTCA's implementing regulations consider a claim to be properly presented when the government receives a completed SF 95 (or other written notification of an incident), and "a claim for money damages in a sum certain . . . ." 28 C.F.R. § 14.2(a) (1999) (emphasis added); see also 39 C.F.R. § 912.5(a) (1999). Requesting a sum certain is a necessary element of any FTCA administrative claim. Failure to request a sum certain within the statute of limitations deprives a district court of jurisdiction over any subsequently filed FTCA suit.

Kokotis v. U.S. Postal Serv., 223 F.3d 275, 279 (4th Cir. 2000) (internal citations omitted). Here, Plaintiff has not alleged in the Complaint that he has complied with the administrative claim requirement before bringing a claim of negligence against the United States or its agencies. Therefore, Plaintiff's negligence claim against the United States and its agencies that are named as Defendants will be dismissed without prejudice for failure to exhaust administrative remedies.

Next, Plaintiff purports to bring a claim under the federal Privacy Act, 5 U.S.C. § 552a, against Defendant Angela Eggerston, Staff Sergeant with the 108th U.S. Army Reserves, for allegedly releasing information to officials in the Army ROTC program at the Florida International University in Miami, Florida, causing Plaintiff to lose his job as a military science instructor. Plaintiff fails to state a claim against Defendant Eggerston, as Section 552a does not provide a cause of action against individuals. See Parks v. United States Internal Revenue Serv., 618 F.2d 677, 684 (10th Cir. 1980); Jacobs v. Bureau of Prisons, 845 F. Supp. 2d 224, 226 n.1 (D.D.C. 2012).

Finally, to the extent that Plaintiff is bringing state law claims against any individual Defendants, such as defamation and negligence, because this Court is dismissing all of Plaintiff's federal claims over which this Court has original jurisdiction, the Court declines to exercise supplemental jurisdiction over these state law claims and dismisses these claims without prejudice to Plaintiff to bring them in state court. See 28 U.S.C. § 1367(c)(3).

Here, the Court finds that, in accordance with this reasons stated above, the Court is dismissing all claims against all Defendants. Thus, there are no claims remaining, and this entire action shall be dismissed. Plaintiff's claims that are barred by Heck, the FTCA claims against the United States, and the state law claims against the individual Defendants are dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated herein, the Court dismisses this action.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion to Proceed in Forma Pauperis, (Doc. No. 2), is **GRANTED** for

the limited purpose of this review.

2. This action is dismissed on initial review under 28 U.S.C. §§ 1915A and 1915(e).

3. The Clerk is directed to terminate this action.

        Signed: January 28, 2014

        Graham C. Mullen
        United States District Judge